# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

STEVE B. SMITH, *et al.*, )
 )
 Plaintiffs, )
 )
v. ) No. 3:03-CV-593
 ) (Phillips/Shirley)
JEFFERSON COUNTY BOARD OF )
SCHOOL COMMISSIONERS, *et al.*, )
 )
 Defendants. )

## MEMORANDUM AND ORDER

The matter before the Court is an action for declaratory relief as well as damages brought by plaintiff teachers pursuant to 42 U.S.C. § 1983, Article 1, § 10 of the United States Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution, charging school defendants, each of them, while acting under the color of state law, of depriving plaintiffs of their property interests in their teaching positions with the Jefferson County Board of Education without due process of law, impairing the obligations of plaintiffs' contracts, and denying them equal protection of the law, guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. This action is also brought by plaintiffs pursuant to the Tennessee Constitution and statutory and common law of the State of Tennessee, specifically Article I, § 8, Article I, § 20, and Article XI, § 8 of the Tennessee Constitution and Tenn. Code Ann. §§ 49-5-501, *et seq.*, 49-2-203, and 49-6-3402. An action is also brought for violation of the

1

Establishment Clause of the First Amendment of the United States Constitution and under Article I, § 3 of the Tennessee Constitution. Additionally, one individual plaintiff brings an action for declaratory relief as well as damages against defendants for retaliating against her in exercising her rights of political association under the First and Fifth Amendments to the United States Constitution.

Plaintiffs have filed a motion for partial summary judgement [Doc. 53], and defendants have filed a cross summary judgement with their opposition to plaintiffs' summary judgment motion [Doc. 57]. The Court heard oral arguments on October 25, 2006 with respect to both motions. For the reasons that follow, plaintiffs' motion for partial summary judgment [Doc. 53] is **DENIED**, and defendants' cross summary judgement [Doc. 57] is **GRANTED**.

I.  **Facts**

For the 2002-2003 school year, plaintiffs Steve Smith ("Smith"), Vickie F. Forgety ("Forgety"), and David Kucera ("Kucera") were all positioned at the Jefferson County Alternative School ("BOE-run alternative school"). Forgety was a tenured teacher and principle for the alternative school; Smith was a tenured teacher and supervisor; and Kucera was a non-tenured teacher with a contract for the 2002-2003 school year.[1]

---

[1] Plaintiff Kucera claims a property right through his contract rights. Specifically, he states that he did not receive a written non-renewal prior to April 15, 2003. Under Rule 5.203, issued by the Jefferson County Board of Education, if the director of the school determines not to renew the contract of a non-tenured teacher, written notice of non-renewal shall be hand delivered or sent to the employee by registered mail so that it will be received by the employee prior to April 15th.

On June 26, 2003, the Jefferson County Board of Education ("BOE") met in special session, and through their action closed the BOE-run alternative school allegedly due to budgetary concerns. Concurrently, plaintiffs' positions were abolished by this action, and the plaintiffs were thus dismissed as defined by Tenn. Code Ann. § 49-5-511(b). It is disputed as to whether plaintiffs were timely offered other positions that were comparable and/or whether the plaintiffs were considered "transferred employees."[2] Forgety rejected two teaching positions; requested that her name be placed on the "preferred rehire list" for an administrative or principal position only;[3] drew unemployment for seven months; and ultimately took the principal position in May of 2004 at New Market Elementary where she remains today. Defendants claim that Forgety's net "out-of-pocket loss" is or will soon be zero dollars with profit thereafter due to a higher salary in her new position. As to Smith, he rejected two teaching positions and then accepted a teaching position at a higher rate of pay in Georgia in late July of 2003. Plaintiff Kucera did not continue employment with any school, but went back to a former job at Mountain View.

On or about July 10, 2003, the BOE acted to contract with defendant Kingswood School, Inc. ("Kingswood") to provide alternative school services to Jefferson County students for the 2003-2004 school year.

---

[2] All of the tenured teachers at the BOE-run alternative school, other than the plaintiffs, accepted offers of teaching positions at other schools.

[3] Forgety never had an entitlement to an administrative position such as principle under the Teacher Tenure Act. *McKenna v. Summer County Board of Education*, 574 S.W.2d 527, 530 (Tenn. 1978); Tenn. Code Ann. § 9-5-511(b)(3).

The plaintiffs assert that the BOE cannot contract for alternative school services with a private institution under state statues.  Further, plaintiffs assert that since Kingswood is a religious organization, delegating the function of running an alternative school to Kingswood violates their First Amendment rights under the Establishment Clause.  In regard to the first assertion, defendants assert that such contracts with private organizations are not contrary to state statues.  In regard to the second assertion, defendants assert that Kingswood's day program provides non-sectarian, alternative, educational services  and that plaintiffs have no standing to challenge the legitimacy and lawfulness of the Board's actions.

### A. <u>Plaintiffs' Summary Judgement Arguments</u>

For purposes of partial summary judgement, the plaintiffs assert:  (1) defendants unlawfully delegated the operation of the county alternative school to Kingswood, a religious organization; (2) they had property interests in their positions of employment, which are protected under  the U.S. Constitution, federal statutory law, the Tennessee Constitution, Tennessee statutory law, common law, and the BOE's own rules and regulations; (3) the school defendants' subsequent actions in purporting to abolish the BOE-run alternative school, as well as the plaintiffs' positions of employment, and the school defendants' contracting with defendant Kingswood to provide alternative schools for the BOE were *ultra vires* acts and were thus void; and (4) the plaintiffs' First Amendment rights, procedural and substantive due process rights, and their state constitutional and statutory rights were violated.

## B. Defendants' Summary Judgement Arguments

As to defendants' motion for summary judgement, the defendants advance several grounds to dismiss the matter in its entirety. The Court only generally lists defendants' arguments.

First, the defendants argue that plaintiffs were not deprived of any property interest, for purposes of procedural due process requirements, by the abolition of a category of positions (all employees at the BOE-run alternative school) for budgetary reasons, irrespective of the Board's authority under state law to contract with Kingswood for alternative school services. Second, if the Court should find that plaintiffs were deprived of a property interest triggering the application of federal due process principles upon BOE's abolition of a category of positions through the legislative budgetary process, the "process due" is solely the legislative process itself through the BOE public meetings of a properly constituted legislative body, which defendants assert occurred along with adequate post-deprivation state remedies, which plaintiffs neither pled or proved do not exist.

Third, defendants assert that individualized hearings would not have added any meaningful safeguard against erroneous fact-finding as contemplated by *Loudermill*'s pre-deprivation notice and opportunity to be heard requirement. Thus, plaintiffs were not entitled to individualized notice and opportunity to be heard prior to the abolition of the

BOE-run alternative school. Fourth, to the extent procedural due process individualized notice and hearing principles could be implicated by legislative decisions to contract for private services rather than provide such services through government employees, where plaintiffs allege that the BOE's action was unauthorized under state law, plaintiffs must allege and prove the systemic inadequacy of state post-deprivation remedies, which defendants assert that plaintiffs cannot do.

Fifth, defendants assert that plaintiffs have no generalized substantive due process right to government employment apart from the protections afforded by enumerated constitutional amendments. Thus, plaintiffs' substantive due process cause of action fails to state a claim for which relief can be granted. Sixth, defendants assert the plaintiffs' constitutional claim of impairment of obligation of contract fails because plaintiffs have not alleged nor shown a legislative change of existing law, statute or ordinance, conferring substantive rights on plaintiffs; no contractual right of plaintiffs was impaired or, if it was, such impairment was not "substantial" for purposes of the Contracts Clause; and no "impairment" for constitutional purposes has yet occurred because, if plaintiffs' contractual rights were violated, the contractual obligation still exists and can be remedied in a state court breach of contract action.

Seventh, defendants assert that they did not violate Forgety's First Amendment right of political association by abolishing the BOE-run alternative school. Defendants argue that Forgety has not sufficiently shown a "political affiliation" and any theory of political affiliation would not have caused the outsourcing of the alternative school. The

6

outsourcing was for budgetary reasons. Eighth, defendants articulate that the outsourcing of the alternative school did not violate the Establishment Clause in that Kingswood's school program services are separate from residential program services. Defendants also argue that plaintiffs do not have standing to bring an action under the Establishment Clause.

Ninth, irrespective of the merits of plaintiffs' constitutional claims, defendants claim that the individual defendants have absolute legislative immunity to plaintiffs' claims for damages and/or qualified immunity to plaintiffs' claims for damages.

**II.     Law Applicable to Rule 56 of the Federal Rules of Civil Procedure**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial

simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

**III.     Motion for Summary Judgment and Applicable Law**

A.     Establishment Clause

The plaintiffs assert that losing their positions of employment gives them standing to assert claims pursuant to the Establishment Clause under the First Amendment. The Establishment Clause states that Congress will make no law respecting the establishment of religion. Plaintiffs must be able to establish an actual injury caused by defendants' conduct in violation of the Establishment Clause that can be remedied by a court decree in their favor. *E.g. Washegesic v. Pensigner*, 33 F.3d 679, 682 (6th Cir. 1994).

In this matter, plaintiffs' alleged injury resulting from the loss of jobs is a collateral matter to any alleged Establishment Clause violation. Governmental authority to encourage a sectarian religious view is sufficient injury only if directed toward a plaintiff. *Id.* A plaintiff objecting to religious entanglement has standing because his or her injury

8

is caused by unwelcome, personal, and direct contact with religion. *See Ganulin v. U.S.*, 71 F.Supp.2d 824, 828 (S.D. Ohio, 1999) (quoting *Suhre v. Haywood Cty.*, 131 F.3d 1083, 1086 (4th Cir. 1997)). The requirement of standing focuses on a party seeking to get his or her complaint before a federal court and not on issues he or she wishes to have adjudicated. *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.*, 454 U.S. 464, 482-87, 102 S.Ct. 752, 70 Ed.2d 700 (1982). A plaintiff's complaint must fall within the "zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Plaintiffs alleged injuries, if anything, are the direct result of the BOE's decision to select an outside third party, irregardless of whether that third party is a faith based organization. The injury is not a direct result of any Establishment Clause violation. Plaintiffs simply do not have standing to assert a cause of action under the Establishment Clause.

### B. Political Association

The elements of an actionable First Amendment political association claim involve: 1) engaging in protected political association conduct or expression; 2) an adverse personnel action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection between one and two - that is, is the adverse action motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Even if the plaintiffs put forth enough evidence of a *prima facie* case, the defendants have offered a non-discriminatory reason for Forgety's dismissal sufficient to justify summary judgment on the issue of political association, i.e. the defendants eliminated a category of school employees, the alternative school employees, for budgetary concerns. The BOE picked through the budget for months and ultimately chose various programs to cut, including outsourcing the alternative school. The same result would have occurred regardless of plaintiff Forgety's political association in conduct or expression.

The Court finds that plaintiff Forgety was not singled out for retaliatory purposes; six teachers and one counselor were displaced. *See Helwig v. Pennington*, 30 Fed. Appx. 516, 522 (6th Cir. 2002). Although plaintiff Forgety supported Moody's opponent for director and Moody was involved in eliminating the BOE-run alternative school, Moody expressed nothing but praise for Forgety's work and further offered her a position superior to her last position that included more pay and more management opportunity. Thus, the Court finds that plaintiff Forgety's retaliation claim for exercising her First Amendment rights of political association is without merit.

### C. Deprivation of Property Rights without Procedural Due Process

When determining whether a plaintiff was deprived of any property rights without due process of law, the first inquiry in a two step analysis is whether a plaintiff has a property interest that entitles him or her to due process protection. *Leary v. Daeschner*,

10

228 F.3d 729, 741-42 (6th Cir. 2000). "Property interests, of course are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The second inquiry of the two step process is, if a plaintiff has such an interest, what process is due. *Loudermill v. Donnelly*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This determination is one of federal law and thus is not limited by the procedures that the state may have deemed to be adequate when it created the property right. *Leary,* 228 F.3d at 742. There generally must be a pre-deprivation hearing if there is a protected property right, as both plaintiffs and defendants express. *Id.* at 742-43. However, when a legislative action deprives individuals of a property right, the "process due" is through the legislative process itself. *Knox County Education Association v. Knox County Board of Education*, 60 S.W.3d 65, 76 (Tenn.Ct.App. 2001). The sufficiency of the pre-deprivation procedures is considered in conjunction with post-deprivation review. *Leary,* 228 F.3d at 743.

Plaintiffs essentially argue that their positions were abolished in violation of state statute. Before their positions were abolished, the plaintiffs state that they enjoyed their property rights in their teaching positions under tenure and contract principles. Further, they state that their positions could only be abolished for a sufficient, just, and non-

discriminatory good reason under Tenn. Code Ann. §§ 49-5-511(b)(1), 49-5-501(1), and 49-5-409.  Under Tenn. Code Ann. §49-6-3402, plaintiffs argue that the BOE cannot contract with a private organization to run an alternative school; rather, the BOE can only contract with another board or another agency of local government.  Plaintiffs assert that the term "board" refers to a public board of education;[4] however, the defendants suggest that the meaning of "board" would also encompass the private Kingswood's school board.  This is a state issue of first impression as to whether plaintiffs have a property interest.

As to due process, plaintiffs state that they were given no due process.  However, defendants state that this was an elimination of an entire school and that the BOE meetings coupled with the agenda notice and the opportunity for public input were sufficient to satisfy due process.  Moreover, the defendants assert that the plaintiffs failed to take advantage of the grievance process under the Jefferson County Education Association ("JCEA").  Accordingly, defendants argue that the plaintiffs waived their due process rights by not taking advantage of post-deprivation procedures.

The plaintiffs respond that they were not aware that the BOE intended to do anything to abolish their positions, but that the agenda notice on the web site and in the local paper makes no notice of the alternative school being on the agenda for the June 26, 2003 meeting.  As previously stated, the June 26th meeting is when the BOE-run alternative school was eliminated, thereby abolishing the plaintiffs' position for all practical

---

[4]The Tennessee Education Association ("TEA") filed an amicus brief in line with the plaintiffs' argument, stating that the term "board" means a board of education.

12

purposes. Plaintiffs argue that they should not have the burden to anticipate the breath of what the board will discuss and what action the board will take at their meetings. Moreover, in regard to post-deprivation remedies, plaintiffs assert that grievances may only be filed under the JCEA for disputes between a teacher and the BOE in regard to employment agreements and not over violations of statutory law.

The Court reflects that the parties are debating their property rights under Tennessee state statutes. Nonetheless, after review of the facts and arguments, the Court is persuaded that the plaintiffs did not pursue their post-deprivation remedies. Since the plaintiffs could pursue legal remedies in state court, this Court finds that the matter, clearly, is best suited for state court determination.

### D. Substantive Due Process

The plaintiffs assert claims for violation of their substantive due process rights based upon violation of rights under the First Amendment. However, they also concede that any such claims must be analyzed under the guidelines applicable to specific constitutional provisions. Therefore, all substantive due process claims collapse into the decision on the plaintiffs' First Amendment political association and Establishment Clause claims. As the Court found the First Amendment claims' dismissal to be warranted, a claim for substantive due process also fails in this Court.

### E. Contract Clause

Defendants argue in their cross motion for summary judgement that the plaintiffs have not put forth any evidence regarding the elements of an impairment of contracts theory, particularly on the issues of substantial impairment of contractual rights and whether any impairment is permissible as a legitimate exercise of governmental powers. The plaintiffs neglect to address the defendants' summary judgment arguments regarding impairment of contract allegations.

Nonetheless, no "impairment" for constitutional purposes has yet occurred because, if plaintiffs' contractual rights were violated, the contractual obligation still exists and can be remedied in a state court breach of contract action.

## IV. CONCLUSION

For the reasons hereinabove set forth, plaintiff's motion for partial summary judgement [Doc. 53] is **DENIED**, and defendants' motion for summary judgment [Doc. 57] is **GRANTED** with the exception of the individual defendants' claims of absolute immunity and qualified immunity, which are **DENIED as MOOT**. Pursuant to 28 U.S.C. § 1367(c)(1) and (3), plaintiffs' claims regarding violation of rights under Tenn. Code Ann. §§ 49-5-511(b)(1), 49-5-501(1), 49-5-409, and 49-6-3402 will be **DISMISSED, WITHOUT PREJUDICE,** to refiling the same in an appropriate state court.

**IT IS SO ORDERED.**

**ENTER:**

s/Thomas W. Phillips
UNITED STATES DISTRICT JUDGE